UNITED STATES DISTRICT COURT - EASTERN DISTRICT OF MICHIGAN
ANN ARBOR DIVISION

ROGER KEY and JANET GAJEWSKI,
individually and on behalf of all others similarly situated,
    Plaintiffs,

Case No.: 2:15-cv-11235-AC-MJH
Hon. Avern Cohn

- vs -

INTEGRITY SURVEILLANCE SOLUTIONS, INC. d/b/a
INTEG SECURITY SOLUTIONS, a Michigan Corporation,
    Defendant.

_____/

WOODROW & PELUSO, LLC
Steven Woodrow
Attorney for Plaintiff
3900 E. Mexico Ave., Ste. 300
Denver, CO. 80210
(720) 213-0675
swoodrow@woodrowpeluso.com

THE RUBINSTEIN LAW FIRM
Jan Jeffrey Rubinstein (P57937)
Gregory B. Paddison (P75963)
Attorneys for Defendant
30150 Telegraph Rd., Ste. 444
Bingham Farms, MI 48025
(248) 220-1415
jjrubinstein@yahoo.com

LAW OFFICES OF BRADLEY J. FRIEDMAN, ESQ.
Bradley J. Friedman
30300 Northwestern Hwy., Ste. 106
Farmington Hills, MI 48334

_____/

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND/OR DENY PLAINTIFF'S REQUEST FOR CLASS CERTIFICATION AND BRIEF IN SUPPORT THEREOF

NOW COMES Defendant, INTEGRITY SURVEILLANCE SOLUNTIONS, INC. d/b/a INTEG SECURITY SOLUTIONS, by and through, its attorneys, THE RUBINSTEIN LAW FIRM, and for its Motion to Dismiss Plaintiff's Complaint and/or Deny Plaintiff's Request for Class Certification, relies on the facts and law as set forth in the accompanying Brief.

WHEREFORE, Defendant, INTEGRITY SURVEILLANCE SOLUNTIONS, INC. d/b/a INTEG SECURITY SOLUTIONS, respectfully requests tis Honorable Court Dismiss Plaintiff's Complaint and/or Deny Plaintiff's Request for Class Certification, and grant such other relief as this Court

deems equitable and appropriate.

Respectfully Submitted,
THE RUBINSTEIN LAW FIRM

Dated: April 22, 2015

Gregory B. Paddison (P75963)

UNITED STATES DISTRICT COURT - EASTERN DISTRICT OF MICHIGAN
ANN ARBOR DIVISION

ROGER KEY and JANET GAJEWSKI,
individually and on behalf of all others similarly situated,
     Plaintiffs,

Case No.: 2:15-cv-11235-AC-MJH
Hon. Avern Cohn

- vs -

INTEGRITY SURVEILLANCE SOLUNTIONS, INC. d/b/a
INTEG SECURITY SOLUTIONS, a Michigan Corporation,
     Defendant.

                                                                      /

WOODROW & PELUSO, LLC
Steven Woordrow
Attorney for Plaintiff
3900 E. Mexico Ave., Ste. 300
Denver, CO. 80210
(720) 213-0675
swoodrow@woodrowpeluso.com

THE RUBINSTEIN LAW FIRM
Jan Jeffrey Rubinstein (P57937)
Gregory B. Paddison (P75963)
Attorneys for Defendant
30150 Telegraph Rd., Ste. 444
Bingham Farms, MI 48025
(248) 220-1415
jjrubinstein@yahoo.com

LAW OFFICES OF BRADLEY J. FRIEDMAN, ESQ.
Bradley J. Friedman
30300 Northwestern Hwy., Ste. 106
Farmington Hills, MI 48334

                                                                  /

### DEFENDANT'S BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND/OR DENY PLAINTIFF'S REQUEST FOR CLASS CERTIFICATION

NOW COMES Defendant, INTEGRITY SURVEILLANCE SOLUNTIONS, INC. d/b/a INTEG SECURITY SOLUTIONS, by and through, its attorneys, THE RUBINSTEIN LAW FIRM, and for its Brief in Support of Defendant's Motion to Dismiss Plaintiff's Complaint and/or Deny Plaintiff's Request for Class Certification, states as follows:

1

### ISSUES PRESENTED

1. Must Plaintiff's Complaint be dismissed for failure to state a plausible claim and for failure to give fair notice of the grounds for relief as required by Rule 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)?

2. Do the proposed class Representatives lack standing to represent the proposed classes under *O'Shea v. Littleton*, 414 U.S. 488 (1974)?

3. Are Plaintiffs' proposed classes ascertainable and/or adequately defined?

4. Do individual issues of fact and/or law of the proposed class members predominate over common issues of fact and/or law?

5. Is the class vehicle the superior means of adjudication pursuant to Fed. R. Civ. P. 23(b)(3)?

## CONTROLLING AUTHORITY

1. FRCP 1

2. Fed. R. Civ. P. 8(a)(2)

3. Fed. R. Civ. P. 23(b)(3)

4. Fed. R. Civ. P. 23(c)(1)(A)

5. Fed. R. Civ. P. 42(2)

6. 47 USC § 227

7. *Amchem Prods. v. Windsor*, 521 U.S. 591(U.S. 1997)

8. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)

9. *Ashland Hosp. Corp. v. Serv. Employees Int'l Union,* 708 F.3d 737 (6th Cir. 2013)

10. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)

11. *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano,* 648 F.3d 365 (6th Cir. 2011)

12. *Gasoline Products Co., Inc. v. Champlin Refining Co.* 283 U.S. 494 (1931)

13. *Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 160 (1982)

14. *Gulf Oil Co. v. Bernard,* 452 U.S. 89 (1981)

15. *Jones v. City of Cincinnati,* 521 F.3d 555 (6th Cir. 2008)

16. *In re Am. Med. Sys.*, 75 F3d 1069 (6th Cir. 1996)

17. *O'Shea v. Littleton,* 414 U.S. 488 (1974)

18. *Simon v. E. Ky. Welfare Rights Org.,* 426 U.S. 26 (1976)

19. *Warth v. Seldin,* 422 U.S. 490 (1975)

3

## PROCEDURAL BACKGROUND

Plaintiffs, ROGER KEY ("MR. KEY") and JANET GAJEWSKI ("MS. GAJEWSKI"), filed their Complaint before this Honorable Court on March 31, 2015, alleging violations of 47 USC § 227 and 47 USC § 227(c)(5), based upon meritless allegations that Defendant, INTEGRITY SURVEILLANCE SOLUNTIONS, INC. d/b/a INTEG SECURITY SOLUTIONS ("INTEG"), utilized an unlawful "robo-dialer" to solicit sales of security equipment and services. Simultaneous with the filing of Plaintiff's Complaint, Plaintiffs also filed a Motion for and Memorandum in Support of Class Certification.

## PLAINTIFFS' GENERAL ALLEGATIONS

Plaintiffs' Complaint alleges, *inter alia*, that INTEG "provides a wide range of security options for homes and businesses. In their pursuit of marketing those services, Defendant … conducted a telemarketing campaign" (Complaint at ¶ 11). "In order to reach more customers, Defendant uses an invasive and illegal method of advertising: unsolicited telemarketing known as robocalling" (Complaint at ¶ 12). "Defendant or its agents place pre-recorded calls to customers in an attempt to schedule an appointment to sell [INTEG'S] security products. These messages are vague, and to learn more, the consumer has to press a digit on his phone's keypad. Once the digit is pressed, the consumer is automatically connected to a live operator. The live operator tries to schedule an appointment to sell [INTEG'S] products" (Complaint at ¶ 13). Defendant has denied each allegation set forth above.

## MR. KEYS' GENERAL ALLEGATIONS

Plaintiffs' Complaint alleges, with respect to Plaintiff, MR. KEY, that MR. KEY "started receiving pre-recorded telemarketing calls on his residential landline regarding home security systems" (Complaint at ¶ 18). "After receiving several of these unwanted calls regarding security

systems and wanting to identify the company in order to have the calls stopped, [MR. KEY] learned … that the company calling him, [INTEG], was promoting GE Home Technologies security products and [INTEG] would install the product. [MR. KEY] requested to be removed from Defendant's calling list" (Complaint at ¶ 19). Plaintiffs also allege, with respect to MR. KEY, that MR. KEY had also received calls for INTEG, both prior to and following his request to be removed from Defendant's calling list (Complaint at ¶¶ 20-23). Plaintiff, MR. KEY, also alleged that he did not provide prior consent to be contacted by Defendant and that his landline phone has been registered on the do not call registry since July 28, 2013 (Complaint at ¶¶ 23-24). To the extent that such allegations are known to Defendant, Defendant has denied the same.

### MS. GAJEWSKI'S GENERAL ALLEGATIONS

Plaintiffs' Complaint alleges, with respect to Plaintiff, MS. GAJEWSKI, that MS. GAJEWSKI "started receiving pre-recorded telemarketing calls on her cell phone regarding home security systems" (Complaint at ¶ 26) and that MS. GAJEWSKI "did not provide her prior express written [consent] to be called by Defendant and did not interact with Defendant in any way prior to receiving calls from it" (Complaint at ¶ 28). As with MR. KEY, MS. GAJEWSKI further alleges that her "cell phone has been registered on the do not call registry since December 07. 2004" (Complaint at ¶ 29). Again, to the extent that such allegations are known to Defendant, Defendant has denied the same.

### DEFENDANT'S MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6)

A. FRCP 12(b)(6)

In reviewing a Rule 12(b)(6) motion to dismiss, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff," but "need not accept as true legal conclusions or unwarranted

factual inferences." *Hunter v. Sec'y of U.S. Army,* 565 F.3d 986, 992 (6th Cir. 2009) [quoting *Jones v. City of Cincinnati,* 521 F.3d 555, 559 (6th Cir. 2008)]. Under the federal notice pleading standards, a complaint must contain "a short and plain statement of the claim showing how the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this statement is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Twombly,* 550 U.S. at 555). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts that "state a claim to relief that is plausible on its face," and that, if accepted as true, are sufficient to "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 570.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. 678. "A claim is plausible on its face if the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano,* 648 F.3d 365, 369 (6th Cir. 2011), *cert. denied,* 132 S. Ct. 1583, 182 L. Ed. 2d 172 (2012) (quoting *Iqbal,* 556 U.S. at 677). Where a complaint pleads facts that are merely consistent with a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557).

The present case is brought under the Telephone Consumer Protection Act ("TCPA"), specifically 47 U.S.C. § 227(b)(1)(A)(iii), which provides, in the pertinent part:

> It shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service.

The Sixth Circuit has not specifically crafted elements of a § 227(b)(1) violation involving a cellular telephone. However, in interpreting a statute such as this, the Court must begin with the text of the statute itself, and if the language is plain, the Court must give the language effect and end its analysis. *See Ashland Hosp. Corp. v. Serv. Employees Int'l Union*, 708 F.3d 737, 741 (6th Cir. 2013) (internal citations omitted). Here, given the clear text of the statute, the Court can determine that Defendant is liable for a violation of § 227(b)(1) if it: (1) makes a call; (2) using (a) an automatic dialing system, or (b) a prerecorded or artificial voice; (3) to a telephone number assigned to a cellular telephone.

### B. *Strand v. Corinthian Colleges, Inc.*, 2014 U.S. Dist. LEXIS 52963 (W.D. Mich. April 17, 2014)

The facts as alleged in Plaintiffs' Complaint mirror, identically, the facts as presented in *Strand v. Corinthian Colleges, Inc.*, 2014 U.S. Dist. LEXIS 52963 (W.D. Mich. April 17, 2014) [an unpublished opinion, attached as Exhibit "A"], wherein the Defendant allegedly contacted Plaintiff numerous times over a four (4) year period. In *Strand*, the Plaintiff alleged that:

> [W]hen she would answer the phone she would hear pre-recorded messages or be connected to a live representative after several seconds of silence. The calls offered Plaintiff the opportunity to enroll in classes at Defendant's school. Plaintiff informed a live representative in October 2013 that she was not interested in Defendant's services and that she did not want to receive automated calls anymore. Plaintiff alleges that Defendant continued to contact her. Plaintiff claims all of these calls were made to her cellular telephone, the number to which she does not provide. *Id.* at 1-2.

As articulated by Michael P. Daly, in his article from The National Law Review (April 28, 2014) "Michigan District Court Dismisses TCPA (Telephone Consumer Protection Act) Action

7

Because Plaintiff Refused to Plead Her Telephone Number" (attached as Exhibit "B"), in *Strand*, the plaintiff alleged that the defendant used an ATDS to send prerecorded messages to her cellular telephone number in violation of the TCPA. *See* 47 U.S.C. § 227(b)(1)(A)(iii) ("It shall be unlawful for any person … to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service…."). In both the original and amended complaints, however, Plaintiff omitted the number at which she allegedly had been called. The defendant moved to dismiss, arguing that a TCPA complaint that omits the number called does not state a plausible claim or give fair notice of the grounds for relief as required by Rule 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The court summarized the defendant's argument as follows:

> Defendant argues that if a plaintiff is not required to provide her cellular telephone number and the times and dates the alleged violations occurred, a defendant cannot reasonably determine if a violation occurred. Defendant asserts that to impose a more lenient pleading standard would allow plaintiffs in TCPA cases to extort settlements from defendants by imposing asymmetric discovery costs on them, contrary to the policy aims of *Iqbal* and *Twombly*. Defendant's argument, at its core, is that without the telephone number and the time and date of the calls, it is not on sufficient notice of the grounds on which Plaintiff's claim lies. *Strand* at 6.

The plaintiff countered that the defendant was blurring the line between Rule 8's plausibility standard and Rule 9's particularity standard:

> Plaintiff characterizes Defendant's argument as requiring a 'particularity' standard akin to the standard imposed on fraud pleadings under Fed. R. Civ. P. 9(b). Plaintiff cites some ten unpublished district court cases from around the country … for the proposition that she need not plead specifically the date and time of each allegedly unlawful telephone call. The Court need not evaluate the persuasiveness of these decisions, as the present motion can be decided on the basis of Plaintiff's failure to plead the cellular telephone number she alleges was called in violation of § 227(b)(1). *Id.* at 7.

The court sided with the defendant. Although it acknowledged that the defendant "has not cited a specific authority on point that requires a plaintiff to plead her cellular telephone number," it was nonetheless "convinced that proper application of Fed. R. Civ. P. 8, as applied in light of *Iqbal* and *Twombly*, supports such a requirement in TCPA cases." *Id.* at 8. It held as follows:

> Specifically, a plaintiff is required to plead facts that make a defendant's liability plausible. This means going beyond factual allegations that are merely consistent with a defendant's liability. Here, Plaintiff's complaint alleges that Defendant made calls to her cellular telephone and that such calls were made, to her knowledge, from an ATDS. Plaintiff also alleges numerous facts to bolster her contention that Defendant utilizes ATDS technology, arguably raising that contention beyond the speculative level. However, the bare assertions in the complaint that the calls were placed to Plaintiff's "cellular telephone," are merely consistent with Defendant's liability, but do not serve to put Defendant on notice of the grounds on which Plaintiff's claim lies. *Id.* at 8-9.

As Plaintiffs' Complaint is factually on all fours with *Strand*, and like *Strand*, Plaintiffs fail to provide the phone numbers or the dates and times on which either named defendant, MR. KEY or MS. GAJEWSKI, allegedly received automated phone solicitations, Plaintiffs' Complaint must be dismissed.

### DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION

FRCP 23(c)(1)(A) requires this Court to consider issues of class certification "at an early practicable time after a person sues or is sued as a class representative..." The rule **does not** require discovery or even a motion for class certification and thus, this Court may address the suitability of class action certification based upon the Complaint alone. As the U.S. Supreme Court stated in *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982), "sometimes [class certification] issues are plain enough from the pleadings" and a number of courts have recognized that certification issues may often be resolved without any discovery, particularly in light of the judicial goal of ensuring the "speedy and inexpensive" determination of the action. FRCP 1; Lisa L. Heller and Jennifer A. Adler, Bloomberg Law Reports – Class Actions Vol. 2, No. 6 "Using

Motions to Dismiss to Challenge Class Allegations" (attached as Exhibit "C").

For example, in a putative class action filed in the class friendly 9th Circuit - District of Nevada, the district court recently granted the defendant's Motion to Deny Class Certification before any discovery had been conducted. *Picus v. Wal-Mart Stores, Inc.*, Nos. 07-cv-00682, 07-cv-00686, 07-cv-00689, 2009 BL 53475 (D. Nev. March 16, 2009). In *Picus*, the court ordered that all discovery be stayed until the issue of class certification was decided, recognizing that it would be wasteful to conduct expensive class discovery where the defendant's motion may eliminate the class aspect of the case. The courts that have considered dispositive motions at the opening stages of a prospective class action, have done so under the standards governing motions to dismiss for failure to state a claim and applied the standard of Rule 12(b)(6). *Walls v. Wells Fargo Bank, N.A. (In re Walls)*, 262 B.R. 519, 524 (E.D. Cal. 2001) ["... the motion to deny class certification, having been brought prior to any discovery, should be construed according to the same legal standards as a motion to dismiss under Rule 12"]. Under this standard, the "well-pleaded" allegations of the complaint are accepted as true and read in a light favorable to the plaintiff and the class allegations will be dismissed if the proposed class cannot be certified as a matter of law. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

Additionally, in determining whether to certify Plaintiffs' proposed classes, this Court must rigorously scrutinize a class-certification motion under Rule 23's prerequisites. See *General Tel. Co v. Falcon*, 457 U.S. 147, 161 (1982); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996). Although this Court has broad discretion to certify Plaintiffs' proposed classes, it must exercise that discretion within the confines of Rule 23. See *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981); *Castano*, 84 F.3d at 740. Under the guidelines of Rule 23, Plaintiffs must demonstrate that all prerequisites of Rule 23 have been met. See *Castano*, 84 F.3d at 740; *Horton v. Goose*

10

*Creek Ind. Sch. Dist.*, 690 F.2d 470, 486 (5th Cir. 1982); *In re Am. Med. Sys.*, 75 F3d 1069, 1086 (6th Cir. 1996) (holding that the district court erroneously reversed the proper burden of proof by asking the defendants to show cause why certification was not warranted). Subsection (b)(3) of Rule 23 requires this Court to find that predominance and superiority exist: "that the questions of law or fact common to the members of the class predominate over any questions affecting only the individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

## A. THE PROPOSED CLASS REPRESENTATIVES LACK STANDING TO BRING THE PRESENT ACTION

The Supreme Court has held that a plaintiff who lacks individual standing when suit is filed cannot maintain a class action: "[I]f none of the named plaintiffs purporting to represent a class establishes the requisites of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)."That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) [quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)].

If the proposed class representative lacks standing to bring all of the proposed class claims, the court lacks power to adjudicate the case, and the court should dismiss the case for want of jurisdiction. See *M.D. Anderson Cancer Center v. Novak*, 52 S.W.3d 704 (Tex. 2001) [applying Texas law, but relying on federal precedents]. If the proposed class representative has individual standing to assert some of the proposed class claims, the court should dismiss those claims in which the class representative has no standing and analyze the remaining claims for certification

11

under Rule 23. See, e.g., *O'Shea v. Littleton*, 414 U.S. 488, 504 (1974); *James v. City of Dallas*, 254 F.3d 551, 568-69 (5th Cir. 2001); *Hassine v. Jeffes*, 846 F.2d 169, 176 (3d Cir. 1988).

Should this Court determine that the Plaintiffs' Complaint is deficient and must be dismissed for the reasons set forth above, neither proposed class representative, MR. KEY or MS. GAJEWSKI, will have standing to act as a Class Representative and Plaintiffs' Motion for Class Certification must be denied, as Plaintiffs will have failed to produce a single class representative.

B. PLAINTIFFS' PROPOSED CLASS IS NOT ADEQUATELY DEFINED

A fundamental requirement of any class action is that the class must be defined in a manner such that it is "ascertainable." Both the court and the parties must be able to reasonably identify who would be a member of the class. Although this is not an express requirement under Rule 23, a determination of whether the class is adequately defined is a necessary prerequisite to class certification. *See, e.g., De Bremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970); *Mad Rhino, Inc. v. Best Buy Co., Inc.*, No. 03-cv-05604 (C.D. Cal. Jan. 14, 2008). Therefore, if the class is not adequately defined such that its members are identifiable, it cannot be certified.

In the present action, Plaintiffs' proposed classes are defined as follows:

**Robocall Class:** Al persons in the United States who (1) received a telephone call; (2) promoting Defendant [INTEG'S] services; (3) that featured an artificial or pre-recorded voice; and (4) for which the caller had no record of prior written express consent to make such call to the telephone number that received it.

**Do Not Call Class:** All individuals in the United States (1) who had his or her telephone number(s) registered with the National Do Not Call Registry; (2) who never consented to be contacted by Defendant; (3) to which Defendant made more than one telephone call to; (4) promoting Defendant's products or services; (5) within any 12-month period (see Exhibit "B" at Page 5).

It is improper of Plaintiffs to attempt to certify such failsafe classes, whereby membership in the class rests on the paramount liability question, and by definition, only those absent class members entitled to recover are members of the proposed class. The classes defined by Plaintiffs is

12

fundamentally defective as the members of either class proposed by Plaintiffs would be impossible to identify until **after** a trial on the underlying issue of liability.  More specifically, should INTEG prevail on the underlying merits of the case, neither proposed class will have any members, thereby defeating the very purpose of class certification. Where a class is defined in such a manner that the court must determine the ultimate issue of liability in the case, it cannot be certified because the court is unable to determine who is included in the class before a trial on the merits.  8 *Newberg on Class Actions*, § 24.17 (4th ed. 2008).  The Court must therefore find Plaintiffs' proposed classes unascertainable, as the burden of conducting multiple trials on the merits of each class member's case negates the efficiency of the class action process. *Forman v. Data Transfer*, 164 F.R.D. 400, 404 (E.D. Pa. 1995) (plaintiff's proposed class definition was untenable where a determination of class membership "would essentially require a mini-hearing on the merits of each case"). This is clearly the circumstance now before this Court, as Plaintiffs' proposed classes are ultimately defined as including all persons who may have been injured or harmed by the wrongful conduct alleged in the complaint. *Conigliaro v. Norwegian Cruise Line*, No. 05-cv-21584 (S.D. Fla. Aug. 31. 2006) (class of cruise passengers "who suffered either physical injury, and/or emotional injury, and/or had their cruise ruined" was impermissibly vague and "unavoidably" implicated the merits of the case). To determine who would be included in Plaintiffs' proposed class, this Court would have to determine what, if any, "harm" was suffered by each putative class member.

Similarly, in *Ford Motor Co. v. Sheldon*, 22 S.W.3d 444 (Tex. 2000), a class action was filed against Ford Motor Co., alleging that Ford had used a defective paint process that resulted in premature peeling. The proposed class was defined as all persons who bought certain model Fords who had to pay Ford or one of its dealers "for a paint repair to their vehicles to repair peeling or

13

flaking paint caused by a defective paint process ...." The Supreme Court of Texas, which looks to federal decisions for guidance, held this class definition improper. The inclusion of the defective paint process as an element of the class definition impermissibly required a determination of the merits before the court could ascertain whether a given person is a class member. Were the defendants to prevail at trial, the proposed class would have no members, and no automobile purchasers would be bound by the judgment. *Id.* at 454.

Plaintiffs' proposed classes impermissibly requires this Court to determine the merits of Plaintiffs' claims **before** it can ascertain who may be included as a member of either proposed class. Procedurally, this Court would be required to determine that INTEG did in fact solicit its products and services by phone, either by an automated recording or otherwise, to potential customers who had not provided their prior consent to such solicitation. Such proposed class definitions clearly are improper, particularly in light of the fact that Plaintiffs have not stated what phone numbers were allegedly called, nor has Plaintiff alleged the time and date on which the calls were allegedly made. A properly defined class identifies the plaintiffs who will be bound by the judgment if they lose and insures that those actually harmed by the defendant's wrongful conduct will receive the relief ultimately awarded. See *Simer v. Rios*, 661 F.2d 655, 670 (7th Cir. 1981). For a class to be sufficiently defined, it must be precise: the class members must be ascertainable by reference to objective criteria. See *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (noting it is "elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable."); *Newton v. S. Wood Piedmont Co.*, 163 F.R.D. 625, 632 (S.D. Ga. 1995); *Gomez v. Illinois State Bd. of Educ.*, 117 F.R.D. 394, 397 (N.D. Ill. 1987); *Joseph v. General Motors Corp.*, 109 F.R.D. 635, 639 (D. Colo. 1986).

Furthermore, Plaintiffs allege that "[t]he exact numbers of members of the Class is unknown and is not available to Plaintiffs at this time, but individual joinder in this case is impracticable. The Classes likely consist of hundreds if not thousands of individuals. Class members can be easily identified through Defendants records" (Complaint at ¶ 32). Essentially, Plaintiffs intend on using the discovery process not to establish a viable case against INTEG, but rather to identify who the Plaintiffs are. This precise issue was addressed in the context of a proposed class action suit regarding TCPA violations in *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, (E.D. Wis. 2014).

> Ascertainability in this case is about "identifying and providing notice to the class members as individuals, not merely numbers on a list." *Smith v. Microsoft Corp.*, 297 F.R.D. 464, 473 (S.D. Cal. 2014). The plaintiff has proposed using a reverse-lookup provider to ascertain class members... this method presents a two-fold problem in light of: (1) the Seventh Circuit defining "called party"—*i.e.*, who may bring a claim under the TCPA—as "the person subscribing to the called number **at the time the call is made**," *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 643 (7th Cir. 2012)[**emphasis in original**]; and (2) the plaintiff's expert's concession that reverse-lookup services can be inaccurate ...
>
> Therefore, "new persons who do not belong in the class might now own numbers encompassed by the class, and persons who should be in the class may no longer own the number." *Microsoft*, 297 F.R.D. at 473...
>
> *Jamison*, which the plaintiff goes to great lengths to distinguish, involved a class that only covered "four years-worth of alleged telephone calls" and the court found reverse-lookups insufficient because "[t]he current subscribers of the cellphone numbers that were called over that period are likely not to be the same people as who were the subscribers when the calls were made." *Jamison*, 290 F.R.D. at 109. Moreover, **in *Jamison* the plaintiff proposed reviewing the defendant's records to associate numbers with names, and the court still declined to certify the class (emphasis added)**. The plaintiff, here, has proposed no alternative methods besides reverse-lookups to ascertain class members. It is unclear if there are even alternative—and sufficient—methods to do so. *See Microsoft*, 297 F.R.D. at 473. The death knell for the plaintiff's case is that the Court was unable to find **any** decision involving such a large window of time where ascertainability was met solely based on reverse-lookups. *See, e.g., Stemple v. QC Holdings*, No. 12-cv-01997-BAS(WVG), 2014 U.S. Dist. LEXIS 125313, 2014 WL 4409817, at *8 (S.D. Cal. Sept. 5, 2014) (holding class ascertainable when calls occurred over four

15

years because reverse-lookups were used in conjunction with loan applications) [emphasis in original]. And, not surprisingly, the plaintiff does not cite to one.

The plaintiff's attempts to analogize the instant case to *Birchmeier v. Caribbean Cruise Line, Inc.*, No. 12 C 4069, 302 F.R.D. 240, 2014 U.S. Dist. LEXIS 110338, 2014 WL 3907048, at *1 (N.D. Ill. Aug. 11, 2014), are unconvincing. While class certification was granted in *Birchmeier* and reverse-lookups were to be used, they were also to be used in conjunction with obtaining contact information from "the telephone carriers themselves." *Birchmeier*, 2014 U.S. Dist. LEXIS 110338, 2014 WL 3907048, at *5... Finally, the class period in *Birchmeier* covered an extremely limited period: one year, between August 2011 and August 2012. 2014 U.S. Dist. LEXIS 110338, [WL] at *2...

In light of the foregoing, the Court must find that the class is not ascertainable. *See Bayer*, 727 F.3d at 306 ("**A party's assurance to the court that it intends or plans to meet the requirements [of Rule 23] is insufficient.**") [emphasis added]... *Id.* at 524-525.

The reasoning behind the *Balschmiter* Court's denial of class certification is well supported. See, *Vigus v. Southern Illinois Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 236 (S.D. Ill. 2011) [denying certification of TCPA claims on ascertainability grounds and stating that "[w]here a class is overbroad and could include a substantial number of people who have no claim under the theory advanced by the named plaintiff, the class is not sufficiently definite" and stating that to identify a class under the TCPA, "it would be necessary to identify the people assigned to those numbers at the times the allegedly offending calls were made, which may not be the people currently assigned to those numbers.]

Just as in *Jamison*, *Vigus*, and *Balschmiter*, Plaintiffs in the present matter have put forward no basis by which, even with a complete list of every alleged call, the appropriate class members may be ascertained. Plaintiffs instead appear to rely on this Court to simply accept Plaintiffs' assertion that "[c]lass members can be easily identified through Defendants records" (Complaint at ¶ 32). Such conclusory statements are woefully insufficient in defining an ascertainable class.

C. INDIVIDUALIZED ISSUES PREDOMINATE OVER COMMON ISSUES

16

The basic premise of a class action is that the claims of the class members have common elements, and therefore the most efficient means to resolve those claims is in one forum. For this reason, Rule 23(b)(3) requires that Plaintiffs demonstrate that common questions of fact or law not only exist but "predominate over questions affecting only individual members" and that the class action must be "superior" to other means for adjudicating the case. To determine whether Plaintiffs' proposed classes satisfy the predominance requirement, this Court must analyze how the claims of the individual class representatives (MR. KEY and MS. GAJEWSKI) and those of absent proposed class members will be adjudicated. In analyzing predominance, this Court must analyze what essential factual and legal issues exist regarding the claims of the absent class members and how those essential issues will be tried in conjunction with the trial of MR. KEY and MS. GAJEWSKI'S claims.

This Court's analysis of whether common issues predominate over individual issues begins with a determination of which issues are common and which individual. A "true common issue" is an issue that, when decided in a proposed class representative's case, is also decided for the absent class members (or a defined sub-set of them). The relevant focus then is not on whether the legal or factual question is the same, but on whether the answer to the legal or factual question in the case of the class representative will also answer that legal or factual question in the cases of the absent class members. See *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006 (11th Cir. 1997) [finding common issue of whether Motel 6 had a pattern or practice of racial discrimination not predominant because "as a practical matter, the resolution of this overarching common issue breaks down into an unmanageable variety of individual legal and factual issues."] (quoting *Andrews v. Am. Tel. & Tel. Co.*, 95 F.3d 1014, 1023 (11th Cir. 1996)). This inquiry then requires Plaintiffs to show that the answers to factual questions submitted in MR. KEY and MS.

17

GAJEWSKI'S case will adjudicate all, or at least most, of the essential elements of the absent class members' claims.

To show predominance, Plaintiffs must propose a trial plan that: (1) identifies which legal and factual issues are essential to enter judgment on the claims of MR. KEY and MS. GAJEWSKI; (2) analyzes which of the legal and factual issues essential to the cases of the absent class members can be decided in the trial of the cases of MR. KEY and MS. GAJEWSKI, and how that will occur; and (3) analyzes what additional proceedings will be necessary to enter a class judgment or individual judgments on the claims of the absent class members, and how those proceedings will be conducted. This Court then must analyze the proposed trial plan to make certain it is manageable and protects all of INTEG'S substantive rights. This Court must also consider whether a factual determination of MR. KEY and MS. GAJEWSKI'S claims will resolve elements of the proposed classes' claims.

In a contested class certification proceeding such as the matter at hand, INTEG has constitutional rights to adequate discovery and a jury trial on all essential factual issues underlying the claims **of both the proposed class representatives and the absent class members**. See *Cimino v. Raymark Industries, Inc.*, 151 F.3d 297, 311-12 (5th Cir. 1998) **[emphasis added]**; *In re Fibreboard Corp.*, 893 F.2d 706, 711-12 (5th Cir. 1990); *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 318-19 (5th Cir. 1978). Unless Plaintiffs can demonstrate that the proposed class action proceeding will maintain INTEG'S constitutional rights to discovery and a jury trial on the absent class members' claims, individual questions will predominate over common questions and certification is improper. Accordingly, this Court must also consider whether there will be other factual determinations on elements of the claims of the absentee class members that must be answered in another jury trial, and whether those essential issues can be separated for trial without

18

violating the Seventh Amendment. See *Cimino*, 84 F.3d at 750-51; *Blue Bird Body Co.*, 573 F.3d at 318-19. This Court must deny certification unless the Plaintiffs show that both the trial of MR. KEY and Ms. GAJEWSKI'S claims and any subsequent proceedings are manageable and will protect the rights of the parties opposing certification.

As there are genuine issues of fact on numerous elements with respect to Plaintiffs' proposed classes, including but not limited to: (1) the time and date on which the alleged phone calls were made; (2) to what phone number the alleged phone calls were made; (3) whether the recipient of the alleged phone calls had given prior consent; and (4) whether the recipient of the alleged phone calls is identified on the Do Not Call Registry; INTEG has a due process right to adequate discovery and a Seventh Amendment right for a jury to resolve each issue, with respect to each proposed class member. For these reasons, Plaintiffs' claims are inappropriate for class certification.

### D. PLAINTIFFS' PROPOSED CLASSES FAIL TO SATISFY THE RULE 23(B)(3) SUPERIORITY REQUIREMENT

Rule 23(b)(3) itself identifies four matters pertinent to the analysis of its predominance and superiority requirements: "(1) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation already commenced by or against members of the class; (3) the desirability or undesirability of concentrating litigation of claims in the particular forum; (4) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3). However, this list in not exhaustive. *Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (U.S. 1997). In analyzing superiority, the court in *Castano* identified other factors weighing against a finding of superiority, specifically noting that class certification can dramatically affect the stakes for defendants by magnifying and strengthening the number of unmeritorious claims and by creating insurmountable

pressure on defendants to settle. In *Castano*, the Fifth Circuit found it unfair to subject the defendants to the extreme pressure to settle rather than risk a massive adverse verdict. See also, *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1300 (7th Cir. 1995).

As addressed above, class certification is improper in the present matter because individual questions predominate over common questions. Even if a trial as to the claims of MR. KEY and MS. GAJEWSKI were to uncover that INTEG had engaged in unlawful telemarketing, independent trials of each proposed class member would be necessary to settle questions related to: (1) the time and date on which the alleged phone calls were made; (2) to what phone number the alleged phone calls were made; (3) whether the recipient of the alleged phone calls had given prior consent; and (4) whether the recipient of the alleged phone calls is identified on the Do Not Call Registry. Such a result is prohibited by the Reexamination Clause.

The Reexamination Clause states that "no fact tried by jury, shall be otherwise reexamined in any court of the United States. . . ." U.S. Const. amend. VII. The court in *Castano*, supra, drew from this constitutional guarantee "the general right of a litigant to have only one jury pass on a common issue of fact" a principle recognized by the Supreme Court in *Gasoline Products Co., Inc. v. Champlin Refining Co.* 283 U.S. 494 (1931); see also, *Castano*, 84 F.3d at 750 (quoting *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 391 [5th Cir. 1978]). Under *Gasoline Products*, a partial new trial is improper unless the issue to be retried "is so distinct and separable from the others that a trial of it alone may be had without injustice." *Id.* Without this rule, separate juries might render inconsistent verdicts, by passing on issues involving overlapping legal and factual questions. Under such circumstances, the Fifth Circuit found that "class treatment can hardly be said to be superior to individual adjudication" *Id.* at 751, and **any** such risk precludes a proper finding of superiority. See *Cimino*, 151 F.3d at 312 (**emphasis added**) [after noting that the

20

Seventh Amendment is not altered simply because the case is a Rule 23(b)(3) class action; stating: "Similarly, use of Rule 23(b)(3) or 42(2) does not alter the required elements which must be found to impose liability and fix damages or the identity of the substantive law . . . which determines such elements."]

Accordingly, even if it is assumed *arguendo*, that Plaintiffs are able to establish wrongdoing on the part of INTEG, a determination of damages would require trials for each absentee class member. As there is not only the risk of overlapping legal and factual determinations, but rather the certainty of it, class certification is not the superior means of adjudicating the present matter and Plaintiffs' proposed classes are inappropriate for certification.

WHEREFORE, Defendant, INTEGRITY SURVEILLANCE SOLUNTIONS, INC. d/b/a INTEG SECURITY SOLUTIONS, respectfully requests tis Honorable Court grant Dismiss Plaintiff's Complaint and/or Deny Plaintiff's Request for Class Certification, and grant such other relief as this Court deems equitable and appropriate.

Respectfully Submitted,
THE RUBINSTEIN LAW FIRM

Dated: April 22, 2015

Gregory B. Paddison (P75963)

21

# EXHIBIT "A"

Lexis Advance®
Research

## Document: Strand v. Corinthian Colleges, Inc., 2014 U.S. Dist. LEXIS 52963

# ⚠ Strand v. Corinthian Colleges, Inc., 2014 U.S. Dist. LEXIS 52963

Copy Citation

United States District Court for the Western District of Michigan, Southern Division

April 17, 2014, Decided; April 17, 2014, Filed

File No. 1:13-CV-1235

**Reporter**

**2014 U.S. Dist. LEXIS 52963** | 2014 WL 1515494

TIFFANY STRAND, Plaintiff, v. CORINTHIAN COLLEGES, INC., Defendant.

## Core Terms

cellular telephone, telephone number, alleges, cases, notice, assigned, amended complaint, argues

**Counsel: [1]** For Tiffany Strand, plaintiff: Sergei Lemberg ▾,
Lemberg & Associates LLC ▾, Stamford, CT.

For Corinthian Colleges, Inc., defendant: Kevin Patrick Jacobs ▾, Homer Bonner
Jacobs, Miami, FL.

**Judges:** HON. ROBERT HOLMES BELL ▾, UNITED STATES DISTRICT JUDGE.

**Opinion by:** ROBERT HOLMES BELL ▾

## Opinion

This is a consumer protection matter file pursuant to the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227. The matter is presently before the Court on Defendant's motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 9). Defendant filed this motion after Plaintiff amended her complaint (Dkt. No. 7). Plaintiff has now filed a response (Dkt. No. No. 10) to which Defendant has replied (Dkt. No. 12). Plaintiff has also filed two unpublished district court cases as supplemental authority (Dkt. Nos. 11, 13).

The issue before the Court is whether, under the pleading standards of Rule 8, *Iqbal,* and *Twombly,* a plaintiff in a TCPA action must plead her cellular telephone number to state a plausible claim for relief. The Court holds that such a pleading is required, and therefore will grant Defendant's motion.

### I.

This case arises from Defendant's alleged contacts with Plaintiff over the last four years.  **[2]** (Am. Compl., Dkt. No. 7 ¶ 7.) Plaintiff alleges that when she would answer the phone she would hear pre-recorded messages or be connected to a live representative after several seconds of silence. (*Id.* ¶¶ 9, 10.) The calls offered Plaintiff the opportunity to enroll in classes at Defendant's school. (*Id.* ¶ 9.) Plaintiff informed a live representative in October 2013 that she was not interested in Defendant's services and that she did not want to receive automated calls anymore. (*Id.* ¶ 11.) Plaintiff alleges that Defendant continued to contact her. (*Id.* ¶¶ 12, 13.) Plaintiff claims all of these calls were made to her cellular telephone, the number to which she does not provide. (*Id.* ¶ 8.)

Plaintiff filed the present lawsuit on November 11, 2013. Defendant filed its first motion to dismiss on December 11, 2013 (Dkt. No. 5). Plaintiff responded (Dkt. No. 8) but also filed an amended complaint (Dkt. No. 7) on January 2, 2014. Defendant then filed the present motion to dismiss, arguing that Plaintiff's amended complaint continues to fail to state a claim upon which relief can be granted because the complaint fails to give Defendant fair notice of "what the claim is and the grounds upon which  **[3]** it rests." (Def.'s Mot., Dkt. No. 9 at 2.)

## II.

In reviewing a Rule 12(b)(6) motion to dismiss, the Court must "'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff,'" but "'need not accept as true legal conclusions or unwarranted factual inferences.'" *Hunter v. Sec'y of U.S. Army,* 565 F.3d 986, 992 (6th Cir. 2009) (quoting *Jones v. City of Cincinnati,* 521 F.3d 555, 559 (6th Cir. 2008)). Under the federal notice pleading standards, a complaint must contain "a short and plain statement of the claim showing how the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this statement is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) **[4]** (citing *Twombly,* 550 U.S. at 555). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts that "state a claim to relief that is plausible on its face," and that, if accepted as true, are sufficient to "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 570.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. 678. "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano,* 648 F.3d 365, 369 (6th Cir. 2011), *cert. denied,* 132 S. Ct. 1583, 182 L. Ed. 2d 172 (2012) (quoting *Iqbal,* 556 U.S. at 677). Where a complaint pleads facts that are merely consistent with a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557).

The present case is brought under the TCPA, specifically 47 U.S.C. § 227(b)(1)(A)(iii), which provides, in the pertinent part:

> It **[5]** shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service.

The Sixth Circuit has not specifically crafted elements of a § 227(b)(1) violation involving a cellular telephone. However, in interpreting a statute such as this, the Court must begin with the text of the statute itself, and if the language is plain, the Court must give the language effect and end its analysis. *See Ashland Hosp. Corp. v. Serv. Employees Int'l Union,* 708 F.3d 737, 741 (6th Cir. 2013) (internal citations omitted). Here, given the clear text of the statute, the Court can determine that a defendant is liable for a violation of § 227(b)(1) when it:

> (1) makes a call;
>
> (2) using (a) an automatic dialing system, or (b) a prerecorded or artificial voice;
>
> (3) to a telephone number assigned to a cellular telephone.

## III.

Defendant argues that proper application of the *Iqbal/Twombly* pleading standard requires Plaintiff to plead "a minimum: (1) **[6]** the telephone number that serves as the basis for the First Amended Complaint; and (2) the time and date of each purported violation." (Def.'s Br., Dkt. No. No. 9 at 3.) Defendant argues that "[w]hen faced with an alleged violation fo the TCPA, a defendant should be provided with sufficient information to make an internal determination of whether a violation has occurred." (*Id.* at 4.) Defendant argues that if a plaintiff is not required to provide her cellular telephone number and the times and dates the alleged violations occurred, a defendant cannot reasonably determine if a violation occurred. (*Id.* at 5-6.) Defendant asserts that to impose a more lenient pleading standard would allow plaintiffs in TCPA cases to extort settlements from defendants by imposing

asymmetric discovery costs on them, contrary to the policy aims of *Iqbal* and *Twombly*. (*Id.* at 3.) Defendant's argument, at its core, is that without the telephone number and the time and date of the calls, it is not on sufficient notice of the grounds on which Plaintiff's claim lies.

Plaintiff counters that Defendant "is on ample notice of [Plaintiff's] claims and is free to deny that 1) it used an ATDS [automatic telephone dialing **[7]** system] or deny 2) that it called her cellular phone." (Pl.'s Resp., Dkt. No. 10 at 8.) Plaintiff characterizes Defendant's argument as requiring a "particularity" standard akin to the standard imposed on fraud pleadings under Fed. R. Civ. P. 9(b). (*Id.* at 2-3, 7.) Plaintiff cites some ten unpublished district court cases from around the country (although none from the Sixth Circuit) for the proposition that she need not plead specifically the date and time of each allegedly unlawful telephone call. The Court need not evaluate the persuasiveness of these decisions, as the present motion can be decided on the basis of Plaintiff's failure to plead the cellular telephone number she alleges was called in violation of § 227(b)(1).

Plaintiff cites one case for the proposition that Rule 8 and the cases governing its application do not require her to plead the cellular telephone number Defendant allegedly called, *Manfred v. Bennett Law, PLLC,* No. 12—CV—61548, 2012 U.S. Dist. LEXIS 173935, 2012 WL 6102071 (S.D. Fla. Dec. 7, 2012). (Pl.'s Resp., Dkt. No. 10 at 4.) The relevant statement in *Manfred* occurs in a footnote, where the court states:

> Contrary to Bennett Law's contention, Plaintiff need not allege his specific cellular **[8]** telephone number. The statute simply states that the call must be made to "any telephone number assigned to a ... cellular telephone service." Bennett Law has provided no authority to support its position that Plaintiff's complaint must disclose Plaintiff's cell phone number.

*Manfred,* 2012 U.S. Dist. LEXIS 173935, 2012 WL 6102071, at *2 n.2. Likewise here, Defendant has not cited a *specific* authority on point that *requires* a plaintiff to plead her cellular telephone number. Nonetheless, the Court is convinced that proper application of Fed. R. Civ. P. 8, as applied in light of *Iqbal* and *Twombly*, supports such a requirement in TCPA cases.

Specifically, a plaintiff is required to plead facts that make a defendant's liability plausible. This means going beyond factual allegations that are merely consistent with a defendant's liability. *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557). Here, Plaintiff's complaint alleges that Defendant made calls to her cellular telephone and that such calls were made, to her knowledge, from an ATDS. Plaintiff also alleges numerous facts to bolster her contention that Defendant utilizes ATDS technology, arguably rasing that contention beyond the speculative level. (*See* Am. Compl., **[9]** Dkt. No. 7 ¶¶ 14-23.) However, the bare assertions in the complaint that the calls were placed to Plaintiff's "cellular telephone," (*id.* ¶¶ 7, 8), are merely consistent with Defendant's liability, but do not serve to put Defendant on notice of the grounds on which Plaintiff's claim lies.

The plain language of the statute refers to calls placed to a "telephone *number* assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). A plain reading of the statute then, shows that to prove her case a plaintiff must prove that a defendant called a specific telephone number and that the telephone number was assigned to a cellular telephone service. Notice pleading, therefore, under *Twombly* and *Iqbal,* necessarily requires that a plaintiff plead the telephone number in question to "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 570. Otherwise, as Defendant argues, "[w]ithout the telephone number, TCPA defendants are forced to make educated guesses as to which telephone number belongs to a newly filed plaintiff." (Def.'s Mot., Dkt. No. 9 at 5.)

Plaintiff's "supplemental authority" (Dkt. Nos. 11, 13) does not alter this Court's conclusion. **[10]** Plaintiff avers that each of these cases feature the same defendant (who is the defendant in the present case), and that Plaintiff's counsel represents the plaintiffs in these "supplemental" cases. In each of these cases, the defendants moved to dismiss for failure to state a claim based on the fact the plaintiffs had not pled the specific date and time of each allegedly unlawful call. Each court held that such a pleading was not necessary. Neither court, however, addressed whether pleading the telephone number allegedly called was necessary in a TCPA claim. In fact, in the case from the Eastern District of Michigan (Dkt. No. 13), the plaintiff specifically pled her cellular telephone number. Therefore, the Court's conclusion that a TCPA plaintiff must plead the telephone number assigned to a cellular telephone service that was allegedly called in order to state a claim upon which relief can be granted is unaltered.

Aside from a single reference to *Manfred v. Bennett Law, PLLC*, Plaintiff's only other justification for omitting her telephone number is "privacy reasons." (Am. Compl., Dkt. No. No. 7 at 2 n.1.) However, if Plaintiff is concerned about the privacy of her telephone number, [11] she can easily file it as an attachment under seal.

Defendant also makes oblique reference to Plaintiff's counsel's duty under Rule 11 (b) to make "reasonable inquiry" into the factual basis of Plaintiff's complaint. (Def.'s Mot., Dkt. No. 9 at 6-7.) Defendant argues that Plaintiff's counsel had a duty to make a "minimal factual inquiry" to determine if Plaintiff's claims have merit, and that failure to do so would open counsel to sanctions. (*Id.*) Plaintiff responds that Rule 11 is irrelevant to a Rule 12(b)(6) inquiry and that Defendant can bring a separate motion for sanctions if it feels that doing so is appropriate. (Pl.'s Resp., Dkt. No. 10 at 10-11.) This Court agrees, and will consider Rule 11 when and if a party brings a motion under the same.

## III.

For [12] the foregoing reasons, the Court concludes that Plaintiff's First Amended Complaint fails to state a claim upon which relief can be granted. Defendant's motion requests that the Court either dismiss the complaint entirely or order Plaintiff to file a Second Amended Complaint that includes her cellular telephone number. The Court concludes the second course is more equitable and will be a more efficient use of the parties' resources.

The Court will enter an Order consistent with this Opinion

Dated: April 17, 2014

/s/ Robert Holmes Bell ▾

ROBERT HOLMES BELL ▾

UNITED STATES DISTRICT JUDGE

**Content Type:**

**Terms:**

**Narrow by:** -None-

**Date and Time:** Apr 22, 2015   02:37:58 p.m. EDT

LexisNexis·    About LexisNexis®    Copyright © 2015 LexisNexis. All rights reserved.

# EXHIBIT "B"

Published on *The National Law Review* (http://www.natlawreview.com)

Home > Printer-friendly

# Michigan District Court Dismisses TCPA (Telephone Consumer Protection Act) Action Because Plaintiff Refused to Plead Her Telephone Number

Article By:
Michael P. Daly

On April 17, Judge Robert Bell of the Western District of Michigan found that a plaintiff does not state a claim under the TCPA if she does not plead the telephone number at which she allegedly had been called. *See Strand v. Corinthian Colleges, Inc.*, No. 13-1235, 2014 U.S. Dist. Lexis 52963 (W.D. Mich. Apr. 17, 2014). The decision is a welcome one for defendants who have encountered counsel who only disclose a plaintiff's telephone number as part of reciprocal (and inevitably asymmetrical) discovery.

In *Strand*, the plaintiff alleged that the defendant used an ATDS to send prerecorded messages to her cellular telephone number in violation of the TCPA. *See* 47 U.S.C. § 227(b)(1)(A)(iii) ("It shall be unlawful for any person … to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service…."). In both her original and amended complaints, however, she omitted the number at which she allegedly had been called.

The defendant moved to dismiss, arguing that a TCPA complaint that omits the number called does not state a plausible claim or give fair notice of the grounds for relief as required by Rule 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The court summarized the defendant's argument as follows:

> Defendant argues that if a plaintiff is not required to provide her cellular telephone number and the times and dates the alleged violations occurred, a defendant cannot reasonably determine if a violation occurred. Defendant asserts that to impose a more lenient pleading standard would allow plaintiffs in TCPA cases to extort settlements from defendants by imposing asymmetric discovery costs on them, contrary to the policy aims of *Iqbal* and *Twombly*. Defendant's argument, at its core, is that without the telephone number and the time and date of the calls, it is not on sufficient notice of the grounds on which Plaintiff's claim lies.

*Strand*, 2014 U.S. Dist. Lexis 52963, at *6. The plaintiff countered that the defendant was blurring the line between Rule 8's plausibility standard and Rule 9's particularity standard:

Case 2:15-cv-11255-AC-MJH ECF No. 7, PageID.89 Filed 04/27/15 Page 36 of 41

> Plaintiff characterizes Defendant's argument as requiring a 'particularity' standard akin to the standard imposed on fraud pleadings under Fed. R. Civ. P. 9(b). Plaintiff cites some ten unpublished district court cases from around the country … for the proposition that she need not plead specifically the date and time of each allegedly unlawful telephone call. The Court need not evaluate the persuasiveness of these decisions, as the present motion can be decided on the basis of Plaintiff's failure to plead the cellular telephone number she alleges was called in violation of § 227(b)(1).

*Id.* at *7.

The court sided with the defendant. Although it acknowledged that the defendant "has not cited a specific authority on point that requires a plaintiff to plead her cellular telephone number," it was nonetheless "convinced that proper application of Fed. R. Civ. P. 8, as applied in light of *Iqbal* and *Twombly*, supports such a requirement in TCPA cases." *Id.* at *8. It held as follows:

> Specifically, a plaintiff is required to plead facts that make a defendant's liability plausible. This means going beyond factual allegations that are merely consistent with a defendant's liability. Here, Plaintiff's complaint alleges that Defendant made calls to her cellular telephone and that such calls were made, to her knowledge, from an ATDS. Plaintiff also alleges numerous facts to bolster her contention that Defendant utilizes ATDS technology, arguably raising that contention beyond the speculative level. However, the bare assertions in the complaint that the calls were placed to Plaintiff's "cellular telephone," are merely consistent with Defendant's liability, but do not serve to put Defendant on notice of the grounds on which Plaintiff's claim lies.

*Id.* at *8-9.

The court also quickly disposed of the "privacy reasons" that the plaintiff had offered as a secondary justification for withholding her telephone number. *See id.* at *10-11 ("However, if Plaintiff is concerned about the privacy of her telephone number, she can easily file it as an attachment under seal."). It then gave her leave to file a further amended complaint that would cure her prior pleading deficiencies, which she did just a few days later. *See id.* (finding that granting leave to amend the pleading would be "more equitable and will be a more efficient use of the parties' resources.").

It is not uncommon for plaintiffs' counsel to withhold their clients' telephone numbers and use them as bargaining chips to try to obtain reciprocal discovery from defendants. If followed, the *Strand* decision could put an end to that tactic and put defendants in a better position to make the early assessment of claims that Rule 8 anticipates.

©2015 Drinker Biddle & Reath LLP. All Rights Reserved

**Source URL:** http://www.natlawreview.com/article/michigan-district-court-dismisses-tcpa-telephone-consumer-protection-act-action-beca

# EXHIBIT "C"

**Bloomberg** Law Reports®                                      Class Actions

# Using Motions to Dismiss to Challenge Class Allegations

*By Lisa L. Heller and Jennifer A. Adler, Robins, Kaplan, Miller & Ciresi L.L.P.*

From a defendant's perspective, a class action can be a litigation nightmare. Even setting aside the potential exposure should the case reach the judgment phase, defending a class action ups the ante significantly with respect to the cost of the suit and the resources necessary to defend it. Further, many employees, including executives, will inevitably be required to turn their attention away from running the business and expend time and energy to participate in interviews or depositions, search for and collect documents or otherwise assist in the defense of the class action.

Discovery in class actions is more wide-ranging, more complex and significantly more expensive than individual actions. Depending on the size of the putative class, discovery, even where limited to class certification issues, can take many months or even years and can cost hundreds of thousands of dollars.

Too often companies underestimate the benefits of an early motion to dismiss all or portions of the class claims. Yet a thorough review of the complaint may provide opportunities to significantly narrow or even eliminate the class issues even before any discovery takes place. Further, such motions can educate the court early on as to potential defects in the proposed class and the unlikelihood the class certification criteria will ever be met.

*How Early in the Case Can the Court Address the Issue Of Class Certification?*

Rule 23(c)(1)(A) of the Federal Rules of Civil Procedure (FRCP) requires the court to consider issues of class certification "at an early practicable time after a person sues or is sued as a class representative. . . ." Importantly, the rule does not require discovery or even a motion for class certification. As a result, the court may properly address the suitability of the case for class action status on the face of the complaint alone. In fact, the U.S. Supreme Court has even recognized that "sometimes [class certification] issues are plain enough from the pleadings. . . ."[1]

Plaintiffs will inevitably argue that a motion to dismiss the class allegations is procedurally improper and the issue of certification should not be decided prior to discovery on the class issues.[2] However, a number of courts have recognized that class issues may often be resolved without any discovery, noting that the judicial goal of ensuring the "just speedy and inexpensive" determination of each action.[3] For example, in a putative class action filed in the District of Nevada (located in the traditionally "class friendly" Ninth Circuit), the district court recently granted the defendant's Motion to Deny Class Certification before any discovery had been conducted.[4] In fact, after the defendant filed its motion, the court ordered that all discovery be stayed until the issue of class certification was decided. The court undoubtedly recognized that it would be wasteful to conduct expensive class discovery where the defendant's motion might (and ultimately did) eliminate the class aspect of the case.

Early dispositive motions on class issues can be styled in a number of ways – as a motion to dismiss, a motion to deny certification or even as a motion to strike the class allegations. Courts that have considered these motions have construed them under the standards governing motions to dismiss for failure to state a claim and applied the standard of Rule 12(b)(6) of the FRCP.[5]

© 2009 Bloomberg Finance L.P. All rights reserved.
Originally published by Bloomberg Finance L.P in the Vol. 2, No. 6 edition of the
Bloomberg Law Reports - Class Actions. Reprinted with permission.
The views expressed herein are those of the authors and do not represent those of Bloomberg Finance L.P.
Bloomberg Law Reports ® is a registered trademark and service mark of Bloomberg Finance L.P.

Under this standard, the "well-pleaded" allegations of the complaint are accepted as true and read in a light favorable to the plaintiff and the class allegations will be dismissed if the proposed class cannot be certified as a matter of law. [6]

Thus, a motion to dismiss the class aspects of a case may be filed even before the defendant answers the complaint.

### Is the Class Adequately Defined?

One of the most fundamental requirements of any class action is that the class must be defined in a manner such that it is "ascertainable." Both the court and the parties must be able to reasonably identify who would be a member of the class. Although this is not an express requirement under Rule 23, a determination of whether the class is adequately defined is a necessary prerequisite to class certification.[7] It goes without saying that if the class is not adequately defined such that its members are identifiable, it cannot be certified. Accordingly, an attack on the sufficiency of the class definition may be a means to narrow class issues early on in the case.

### Does the Class Definition Require a Determination of Liability?

Where a class is defined in such a manner that the court must determine the ultimate issue of liability in the case, it cannot be certified because the court is unable to determine who is included in the class before a trial on the merits.[8] Courts thus find these types of classes to be unascertainable and "self-defeating" since the burden of conducting mini-trials on the merits of each putative class member's case negates the efficiency of the class action vehicle.[9] The most obvious example of this is where the class is defined as consisting of all persons who may have been injured or harmed by the wrongful conduct alleged in the complaint.[10] To determine who would be included in such a class, the court would have to determine what, if any, "harm" was suffered by each putative class member.

### Is the Class Definition Too Vague or Indefinite?

A class must consist of an identifiable group of plaintiffs. Courts have refused to certify a class where the class definition is too vague or indefinite such that it would be impossible to identify what putative class members would be bound by the action. For example, in an employment discrimination case, a class of applicants who were allegedly deterred from applying for employment by the defendant's discriminatory employment policies was held unascertainable because membership in the proposed class was dependent upon the state of mind of each class member.[11] Likewise, a class of persons "active in the peace movement who [had] been harassed and intimidated as well as those who fear[ed] harassment and intimidation in exercising their First Amendment right of free expression" was found to be inadequately defined because the class was too imprecise and amorphous.[12]

It may be obvious from the proposed class definition in the complaint that there is no realistic way to determine who belongs in the class in advance of a trial or that membership in the class depends upon the mental state of the putative class members. Under these circumstances, it behooves a defendant to file a motion to dismiss to put this issue before the court.

### Do Individualized Issues Of Law Or Fact Overwhelm Common Issues?

The plaintiff in a class action has the burden to show not only that common issues exist, but that they predominate over individual questions. It can often be determined from the complaint whether these types of individualized inquiries, either of fact or law, would overwhelm the case and thus make it inappropriate for class treatment. Potential red flags include:

- Do putative class members reside in multiple states, potentially implicating the law of multiple states?

- Does the plaintiff allege a number of state law claims?
- Does the plaintiff allege the defendant violated a statute, agreement or duty through various acts that are committed over a period of time?
- Are multiple agreements, over a significant period of time, involved?

The presence of these types of allegations may be an indication that the plaintiff is unable to meet the requirements of Rule 23 and therefore a motion to dismiss is appropriate.

The basic premise of a class action is that the claims of the class members have common elements, and therefore the most efficient means to resolve those claims is in one forum. For this reason, Rule 23(b)(3) requires that common questions of fact or law not only exist but "predominate over questions affecting only individual members" and that the class action must be "superior" to other means for adjudicating the case. It follows that where the claims of the class members are overwhelmed by individualized issues, the class cannot be certified. It may be clear from the face of the complaint without any discovery that individualized issues will predominate and defeat class certification. For example, a plaintiff who seeks to certify a nationwide class of state law claims – which must be decided on the basis of the law of multiple states – sometimes cannot meet Rule 23(b)(3)'s predominance requirement because the legal issues do not pose a common question.

Courts have refused to certify nationwide classes based upon products liability and breach of contract theories on the basis that there was no manageable way to deal with the variances in state laws.[13] Class actions alleging violations of state deceptive trade practices statutes create similar problems. These types of claims often vary from state to state, making it impossible for the court to resolve claims of numerous plaintiffs who reside in various states. In fact, where class members reside in a number of states, simply to ascertain what substantive law applies to each class member's claim requires an individualized choice of law analysis for each class member.

Individualized issues of fact can also preclude class treatment as a matter of law. In breach of contract cases, for example, individualized inquiries may be necessary to determine whether a breach of a contract has occurred even where the agreement at issue is a standard agreement. For example, if plaintiffs allege that the defendant breached an agreement in a number of different ways, individualized issues could easily predominate over common questions. The Eleventh Circuit in *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004), found that individualized issues of fact predominated over common issues on breach of contract claims alleged by a putative class of doctors against HMOs, stating that "each doctor, for each alleged breach of contract (that is, each alleged underpayment), must prove the services he provided, the request for reimbursement he submitted, the amount to which he was entitled, the amount he actually received, and the insufficiency of the HMO's reasons for denying full payment." *Klay*, 382 F.3d at 1264.

### A Motion to Dismiss Can Alert the Court as to the Class Issues

Strategic thinking in any class action should include the possibility of an early motion to dismiss on class issues. Such a motion, regardless of whether it is granted, can be a cost efficient way to curtail litigation costs and streamline the case. Even if the court chooses to dismiss the class claims without prejudice (to allow plaintiff to recast his class allegations) or denies the motion given the early juncture in the litigation, the motion can still provide a valuable opportunity to educate the court as to the class issues. Additionally, if the court recognizes the potential for the case to become unmanageable, it may be willing to narrow the proposed class or curtail the discovery allowed on the question of class certification.

*Lisa L. Heller is the Managing Partner of the Atlanta office of Robins, Kaplan, Miller & Ciresi L.L.P. Her practice focuses on complex business litigation, including class action defense.*

*Jennifer A. Adler is an associate in the Atlanta office of Robins, Kaplan, Miller & Ciresi L.L.P. Her practice focuses in the area of business litigation, including class action defense.*

[1] *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982).

[2] At least one court has specifically rejected this argument on the basis that, under the directive of Rule 23, class issues should be decided as soon as practicable. *See Saunders v. Bell South Adver. & Publ'ng Corp.*, 12 Fla. L. Weekly Fed. D 92 (S.D. Fla. Nov. 10, 1998).

[3] Fed. R. Civ. P. 1.

[4] *Picus v. Wal-Mart Stores, Inc.*, Nos. 07-cv-00682, 07-cv-00686, 07-cv-00689, 2009 BL 53475 (D. Nev. March 16, 2009).

[5] *Walls v. Wells Fargo Bank, N.A. (In re Walls)*, 262 B.R. 519, 524 (E.D. Cal. 2001)(". . . the motion to deny class certification, having been brought prior to any discovery, should be construed according to the same legal standards as a motion to dismiss under Rule 12").

[6] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

[7] *See, e.g., De Bremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970); *Mad Rhino, Inc. v. Best Buy Co., Inc.*, No. 03-cv-05604 (C.D. Cal. Jan. 14, 2008).

[8] 8 Newberg on Class Actions, § 24.17 (4th ed. 2008).

[9] *Forman v. Data Transfer*, 164 F.R.D. 400, 404 (E.D. Pa. 1995) (plaintiff's proposed class definition was untenable where a determination of class membership "would essentially require a mini-hearing on the merits of each case").

[10] *Conigliaro v. Norwegian Cruise Line*, No. 05-cv-21584 (S.D. Fla. Aug. 31. 2006) (class of cruise passengers "who suffered either physical injury, and/or emotional injury, and/or had their cruise ruined" was impermissibly vague and "unavoidably" implicated the merits of the case).

[11] *Harris v. Gen. Dev. Corp.*, 127 F.R.D. 655, 659 (N.D. Ill. 1989).

[12] *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970).

[13] *See, e.g., Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001); *McFarland v. Memorex Corp.*, 96 F.R.D. 357 (N.D. Cal. 1982); *Lozano v. AT&T Wireless Servs.*, 504 F.3d 718, 728 (9th Cir. 2007).